UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---

CIVIL ACTION. 05-11171-WGY

---

JOHN R.HALLUMS
Petitioner,

V.

LOIS RUSSO
Respondent,

---

PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF WRIT OF
HABEAS CORPUS 28 , U.S.C. 2254(b)

---

Respectfully Submitted
By Petitioner-Pro-Se

JOHN R.HALLUMS,JR.
1 Administration Road
Bridgewater, MA. 02324

Dated: 12.14.06

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

JOHN R. HALLUMS, JR.                                    CIVIL ACTION
                                                       NO. 05-cv11171-WGY

    v.

LOIS RUSSO

MEMORANDUM OF LAW IN SUPPORT OF WRIT OF
HABEAS CORPUS 28,U.S.C. 2254(b)

ISSUES PRESENTED

I.  INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL
    FAILED TO INVESTIGATE FOR PRE-TRIAL AND TRIAL.

    (a) Trial counsel's failure to call the potential
        witnesses to testify at trial.

    (b) Trial counsel deprived the petitioner effective
        assistance of counsel where he failed to subpoena
        medical records of the accused.

    (c) Trial counsel deprived the petitioner's effective
        assistance of counsel where he failed to investigate
        the weapon "ROCK" for blood, skin tissue, hairs or
        fibers ect..., alleged used in the assault, and
        failure to obtain photographs of the scene of the
        alleged assualt for trial purposes.

II. PROSECUTION'S CLOSING STATEMENTS WENT BEYOND THE
    REALM OF "FAIR" AND WERE INFACT PREJUDICIAL CREAT-
    ING A RISK OF A MISCARRIAGE OF JUSTICE.

    (a) Prosecutor's closing statements relevant to the
        alleged weapon the "ROCK" were overzealous and
        prejudicially misleading.

    (b) Prosector's closing statements based on the pet-
        itioner's race deprived the petitioner of a fair
        trial, when he injected comments on race.

1

III. **THE ARMED BUGLARY AND HOMEINVASION CHARGES NEVER REACHED THE ELEMENTS OF THE INDICTMENT CHARGES.**

   (a) The accuser claimed he was pushed through a door in a struggle and then retreated, there was no actual breaking in this case.

   (b) There was no person within the dwelling at the time of the alleged breaking to constitute a home invasion.

### STATEMENT OF CASE

A jury in the Hampden County Superior Court (Ford, J. Presiding) convicted John Hallums, March 21, 2001, for armed Home Invasion, Armed Burlary, Assault Battery with a Deadly Weapon, and Assualt and Battery. Sentence was imposed 20 to 30 years. Mr. Hallums, filed a direct appeal wherein appellate counsel contested the conviction of armed home invasion and armed burglary, contending that overcharging led to the incorrect application of essential elements to the evidence and that the Motion For a Required Finding of not Guilty should have been allow- ed on these charges. Commonwealth v. Hallums, 61 Mass.App.Ct. 50 (2004) affirmed, and further appellate review was denied without hearing . See Hallums, 442 Mass. 1104 (2004).

On May 29, 2003, the Appellate Division, at Norfolk, ordered: "that the judgement imposing said sentence be amended by the sub- stituting for said sentence for a term of 20 years and one day, and the judgement of the assault and battery with a deadly weapon dismissed." Mr. Hallums was resentenced in accordance with these orders to 20 years and one day.

On May 4, 2005, Mr Hallums, filed a Motion for a New Trial based on the facts of no due process from the day of his arrest

2

that led to ineffective assistance  of counsel and deprived him of
a fair trial.

On May 17, 2005, FORD, J., denied the Motion For A New Trial
without an evidentiary hearing. Mr. Hallums sought for further
Appellate review on September 11, 2006, and was denied.

## STATEMENTS OF FACTS

On the evening of September 19, 2000, Mr Kenny an  off-duty
Springfield police officer saw from his livingroom window three
blackmen exit their car, cross the street, and enter a public park.
(Tr. 2/39, 2/42). The officer then called the records division to
learn if their car was stollen (Tr. 2/46, 2/97, 2/110, 2/133-34),
because the three men were not from his neighborhood (Tr. 2/99).
While waiting for the records check, the officer confronted the men
. (Tr. 2/122).

At trial, Mr. Kenny, testified that an altercation ensued with
a physical combat proceeding from the street to the side walk, up
the stairs to his front porch of the enclosed porch, and across
the porch through the front door, and into his hallway. (Tr. 2/45,
2/53-58). a witness, retired Springfield officer witness the
commotion at the front of the house. (Tr. 2/181. 2/187). This wit-
ness testified that he recognized Mr. Kenny, whom he knew on the
stoop of the door into the front room. (Tr. 2/184, 2/185). This wit-
ness also testified he saw ("kind of heavy set, dark complexion,
colored fellow at the doorway or on the door, not into the front
room  (Tr. 2/186), right in the doorway.") The witness was un-
able to identify any of these three men. (Tr. 2/191).

3

Another witness, who is a school custodian driving down the
street at the time of this incident, testified at trial that he
saw two black men  pushing Mr. Kenny up the stairs into the porch,
and he saw Mr. Kenny pushing them back down the stairs. (Tr. 2/216.
2/223, 2/217-219, 2/224-225, 227). The custodian said, he saw the
largest of the three blackmen throw a brick or a rock at Mr Kenny
who dodged it as it hit the frame of the house porch. (Tr.2/222,
2/226). He saw no bottles, (Tr. 2/222), but he did witness one of
the three men knock down the retired police officer. (Tr.2/228).
The custodian was unable to identify any of the three blackmen.
(Tr.2/228).

At trial, Mr. Kenny maintained that he was hit in the face
"pretty hard" with the rock in the defendant's hand. (Tr.2/103).
Despite the intensity of the combat to which Mr. Kenny had testified
he was struck 15 to 20 times, (Tr.2/118), he was not certain if
the rock came in contact with his face. (Tr.2/103-104). Mr. Kenny
had no bleeding, (Tr.2/104, 2/117, 2/118), nor did he receive any
marks other than a swollen nose. His glasses were cracked, and he
had minor brusing on his back. (Tr.2/127-128). He said he spent
four to five hours at a hospital, (Tr.2/125), but police took no
photos of Mr. Kenny. (Tr.2/118, 2/121). There was no damage to
the porch, the front door, nor the hallway of the house. (Tr.2/129).

The defendant Mr. Hallums maintains that Mr. Kenny unjustly
profiled them, immediately determining that their car was stolen
came  outside into the street and provoked a confrontation with
the three men. (Tr.2/133). The bottles that were alleged to be
weapons showed no finger prints impicating any of the three def-

4

endant s. (Tr.3/14). The photo that was admitted to show where they found the bottles, showed no bottles in them. (Tr.2/105). The police did no testing of any kind on the "rock", brick placed in evidence. (Tr.3/17).

There were no photos of the porch to determine whether four men could brawl in that small erea without touching anything or damage anything. (Tr.3/27). Like wise, the retired officer and the custodian each gave different testimony, one witness said it was two men, and the other witness said it was three men. In general, they gave two totally different versions than Mr. Kenny's. (Tr.3/38).

Mr Hallums maintains that Mr. Kenny did testify that all three men were the three men involved in this incident; However, he is the only person prosecuted by the Commonwealth. The two co-defendants never testified at defendant's trial. (Rule 30 Motion, R.39 to R.42). Alvin Jordan was issued a summons to appear at trial, (Rule 30, R.3), apparently trial counsel failed to call Mr. Jordan as a witness. The defendant anticipated Mr. Jordan's testimony would challenge, contridict and contest that of Mr. Kenny's of the incident particularly on the home invasion charge. Another witness, Barry L.La Riviere, whom **gave** a detailed statement to the police was never interviewed; or, called to testify. (Rule 30, R.33).

The trial Counsel failed to request hospetal records to impeach Mr. Kenny's testimony of being at the hospital for 4 to 5 hours after examination. (Rule 30, R.50). The defendant's request for post conviction discovery of medical reports , independent test of the "rock" was sufficient for the motion judge to grant a evidentiary hearing to determine the existence of anticipated exculpatory evidence within these medical records, and the opportunity to summons the witnesses who trial counsel failed to call to testify at trial. The motion judge abused his discretion when he denied the New Trial Motion without a hearing. (Rule 30, R.7 to 32).

5

Because the two accusers were Springfield, Massachusetts, police officers, whose family members where higher ranked officials of this police department. Mr Hallums was over zealously charged of hideous crimes without any due process, and then overzealously prosecuted of hideous crimes as a result of a incident lasting about 60 seconds, and leaving no serious injuries of any kind with no physical evidence of any kind to corroborate weapons charge. The testimony of several Springfield police officers whom were not present at the scene at the time of this alleged incident, was used at trial. The defendant's request for the overall review of his case was crucial and deserved rights and protection under the law to make sure he was not erroneously charged and convicted.

<u>ARGUMENTS</u>

I.  INEFFECTIVE OF ASSISTANCE OF COUNSEL WHERE COUNSEL
    FAILED TO INVESTIGATE FOR PRE-TRIAL AND TRIAL.

   (a) **Trial counsel's failure to call the potential
       witnesses to testify at trial.**

The basic defense counsel owes to the administration of jus-
tice and as to serve as the accused's counseler and advocate with
courage and devotion and to render the effective quality represe-
ntation.

The defendant was deprived of his right to effective assist-
ance of counsel where counsel failed to call two potential witne-
sses who will provide vital testomony to the entire incident and
would of cleared the defendant of the home invasion charge  **Alvin
Jordan,** and **Barry LaRiviere.** Trial counsels conduct in this case
clearly shows incompetency, inefficiency of what is expected from
adequacy of representation where pre-trial preparation was vital
in case of trial, this did indeed deprived the defense effective
assistance, <u>Commonwealth</u> V. <u>SaFerian</u>, 366 Mass. 89, at 96(1974).
The trial records reflects both potential witnesses were on the
witness list. (Tr.1/11,12). Alvin Jordan was a partaker of the
confrontation, and Barry LaRivire, was an actual witness who that
same night went down to the police station and gave a statment of
the incident, (Rule 30,R. 33-38). The failure to secure testimony
witnesses who would have supported the defendants version of the
incident, created a reasonable probability that the outcome would
have been different, <u>Luma</u> V. <u>Cambra</u>, 306 F.3d. 954-57(2002).

7

In **Luma**, (306 F3d. 954-57), defense counsel failure
to interview, or obtain exculpatory statements from
exonerating witness did prejudice the petitioner see,
Brown V. Myers, 137 F3d. 1154(1998)

A attorney must engage in the reasonable amount of pre-trial
investigation and, at the minimum, interview potential witnesses
and make independent investigation of relevant facts and curcum-
stances, failure to interview eyewitnesses to crime strongly
supports the claim of ineffective assistance of counsel, and
when the alibi witness is involved, it is unreasonable for counsel
not to try contact witnesses and ascertain wheather testimony
would aid the defense. Bryant V. Scott,28 F.3d. 1411(1994) Reve-
rsed. Held that counsel was ineffective for failing to investig-
ate alibi winess made known to counsel days befor trial, failing
to interview eyewitnesses, and co-defendants deprived the defen-
dant s U.S.C.A. Const. Amend. 6. The same in this case where
counsel failed to interview co-defendants and eyewitness was not
reasonable. Gray V. Lucas, 677 F.2d. 1086, 1093 n.5(5th. Cir.19-
98). See Kemp V. Leggett, 635 F.2d. 453, 454(5th. Cir. 1998).

By trial counsel failing to call both of these witnesses or
interview them befor trial constituted ineffective assistance of
counsel. Lord V. Wood, 184 F.3d. 1083(1999) Reversed. In this
Commonwealth case Commonwealth V. Delacruz, 61 Mass. App. Ct.
445(2004).

In **DelaCruz**, his strongest ground for requesting a new
trial was trial counsels failure to call his co-defen-
dant as a defense witness.

Every state defendant has the right not only to the timely
appointment of counsel, but also to the assistance of counsel

8

whose quality  of performance does not fall below a minimum le-
vel of effectiveness, McQueen V. Swenson, 498 F3d. 207(1974)
Here it is clearly a fact the defense counsel failed to invest-
igate anything  pertaining to these serious charges home invas-
ion against client than to interview client failed to render
effective assistane of counsel U.S.C.A. Const. Amends.6,14.
U.S. V. Moore, 554 F2d. 1086,1093(D.C. Cir.1996), stating that
anticipation of what a potential witness would say does not ex-
cuse the failure to find out, in the context of an attorney who
failed to contact a witness because he was confident of what
the witness would say. There is no strategy in this case where
witnesses statements, said the defendant did not commit any
kind of home invasion, or armed assault, no where in there stat-
ements did they say the defendant hit Mr. Kenny with a brick or
bottle.

Defense counsel's failure to contact two witnesses defendant
was with during event which led to his arrest was indeed ineffec-
tive of counsel, Workman v. Tate,957 F.2d,1339 (1992). See Ford v.
Parrat, 638, F.2d. 1115, 117 (8th Cir. 1981), is repeatedly stressed the
importance of interviewing witnesses for the preparation of defense.

Under the Sixth Amendment, every criminal  defendant has the right to
have compulsory process for obtaining any and all witnesses in his favor.
Taylor v. Illinois, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed. 798 (1988),
qouting Pennsylvania v. Ritchie, 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).
Every person accused of a crime has the fundamental right to present witnesse
in his own defense, Washington v. Smith, 219 F.3d. 620, 623-31 (7thCir 2000),

9

performace prong metwhen counsel failed to produce critical alibi witnes-
ses at trial, Hadley v. Goose, 97 F. 3d. 1131, 1135 (8th Cir. 1996).

It is fact that defense counsel did not investigate any of the witnes-
ses, nor call any of them to trial which deprived Mr. Hallums of a fundamen-
tal essential element of due process of law, and a fair trial a Constitutional
violation.

### (b) Trial counsel deprived the defendant effective assistance of counsel where he failed to subpoena medical records of the accuser.

The accusers were no ordinary victims, they are public of-
ficails. The defendant was in need of proper investigation to
determine what really happened not any strategy or tactics.
Trial counsel had a duty to explore every avenue to try to get
some kind of justice and not get his client falsely accused on
these serious charges. Rules of Court 3:07, a lawyer is a repre-
sentative of the client, an officer of the legal system, and a
public citizen having a special responsibility for quality
of justice, Rule 1.1, Competence, Rule 1.2, Scope of Represent-
ion, Rule 1.3, Diligence.

The principle is fundamental that failure to conduct a
reasonable pretrial investigation may itself amount to ineffect-
ive assistance of counsel. Strickland v. Washington, 446 U.S.
668 (1984). There is no excuse for counsel not requesting medical
records of a victim who claimed he was viciously assaulted
with a brick and bottles by three men, and being hit by these
men over 15 to 20 times with these weapons and then gave testi-

10

mony under oath he went to the hospital and was examined.
(Tr.2/114,117,119,125,127 128). Bouchie v. Murry, 376 Mass.
324, (1978). In interpreting medical records exception to
the hearsay rule to determine whether certain portion of
records might relate to treatment and medical history are
admissiblle, purpose of hospital records statute, to admit
presumptively relaiable evidence without necessity of calling
numerous hospital personnel as witnesses, must be kept in
mind. M.G.L.A. c.233§79. Pleps v. MacIntryre, 397 Mass. 459
(1986). Information must be recorded from personal knowledge of
entrant or from compilation of personal knowledge of those
under medical obligation of personal knowledge of those under
medical obligation to transmit such information; voluntary
statements of a third person appearing in record are not admis-
sible unless they are offered for reasons other than to prove
truth of the matter contained their in or, if offered for their
truth, come within another exception to hearsay rule or be made
under circumstances which guaranteed their trustworthiness.

> Indeed, if the medical records were requested
> pursuant to M.G.L.A. c. 233§79, the records would have
> been admissable into evidence. Rule 803(a) Federal
> Rules of Evidence, 55 ALR. Fed. 689.

When a case hinges all-but-entirely on whom to believe,
an experts interpretation of relevant physical evidence (or lack
of it) is the sort of "neutral, disenterested" testimony that
may well tip the scales and sway the fact finder. Swofford v.
Dobuck, 137 F.3d 442, 443 (7thCir.1998). The accusser gave
a statement and gave a testimony under oath all through trial on

11

how he was viciously attack and then treated at a hospital.
Him being a police officer and for insurrance reasons, this
examination had to be documented not only for him, but also
for the hospital's safety. There where five different versions
and statements given  by witnesses of the incident. (Tr.3/38).
The defendant's counsel should have represented his client
zealously within the bounds of law, A.B.A. Standard 4.4,1.
Where the investigation of the process shall begin immediately
the appearance of counsel. Paval v. Hollins, 261 F.3d 210(2001).

If Mr Kenny did go to a hospital to be examined for his
alleged injuries, those records should still be in existence.
(Tr.2/127, 128). Why not subpoena records of a victim that
claimed he was hit in the face and body with bricks and
bottles 15 to 20 times for purpose of purjury defense. These
records (if they exist) would have proved fruitful to  the
defense. It was counsel's duty to investigate all avenues
surrounding the claim of assault of the accuser. Trial counsel's
failure to do so violated defendant's Fourteenth Amendment Due
Process guarantee of his Sixth Amendment right to the assistance
of counsel. Bouchillon v. Collins, F.2d 589-597 (1990). A part-
icular decision not to investigate must be directly assessed
for reasonableness in all the circumstances. Counsel has duty
to make reasonable investigations.

> Mass. Crim. Practice Volume 1, (Wounds), and injury
> can tell a great deal about the incident that caused
> it; How, When,and Where.

12

In this case the defendant!s contention is akin to those
made in, United States v. Tucker, 716 F.2d 576, 581 (9th Cir
1983). Wherein that court stated "the inadequacy of counsel's
pretrial investigation 'alone' is sufficient to carry Tucker's
initial burden of demonstrating that he was denied a fair trial
... As the court in Ewing v. Williams noted, 'a court may find
unfairness--and thus prejudice--from the totality of counsel's
errors and omissions.'" Id. at 596 F.2d 391, 396 (9th Cir.
1979). See also, Holsomback v. White, 133 F.3d 1382 (11th Cir
1998). Where the Eleventh Circuit agreed the petitioner re-
ceived ineffective assistance of counsel where his trial counsel
failed conduct pretrial investigation into the conceded lack of
medical evidence (against the petitioner), including trial
counsel's failure to consult with any physicians concerning
the significance of the lack of medical evidence in the case.
Moore v. Johnson, 194 F.3d 586 (1999), this case was affirmed
with the district court holding that counsel did not make an
informed of strategic judgement not to investigate, develope or
present mitigating evidence that is entitled to defernce under
Strickland.

Mr. Hallums informed trial counsel repeatedly prior to
trial and during trial that he never struck Mr. Kenny, especially
with a brick or   bottles. It was counsel's duty to corroborate
the defendant's defense given the seriousness of the charges.
There is no argument that can overcome the fact that better work
provided the defendant with a defense against these charges in

13

this case. Even if we assume that trial counsel's performance
at trial was in some incredible sence adequate, we are still
faced with the impact of his ineffective inadequate performance
prior to trial on Mr. Hallums' right to a fair trial. As the
Eight Circuit observed in McQueen v. Swenson,"the exercise of
the utmost skill during trial is not enough if counsel has neg-
lected the necessary investigation and preparation of the case
or fail to interview essential witnesses or arrange for their
attendance." (Citation omitted), Id. at 498 F.2d at 215-16 (
8th Cir. 1974). The defendant Mr. Hallums', trial counsel's
failure to investigate or offer available mitigating evidence
was professionally unreasonable constituting deficient perfor-
mance denying Mr. Hallums due process, and prejudice to a fair
trial.

Furthermore, despite the intensity of the action alleged in
this incident as testified to by Mr. Kenny. For this alleged
assault to have occurred in a small place such as this  house
porch, there should have been some kind of damages to the door
and hallway of this house;

   (c) **Trial counsel's lack of diligence deprived
      the defendant effective assistance of counsel
      where counsel fail to have the allegde weapon
      "rock" examined for blood, skin, hair, fibers
      and ect..., and he failed to obtain photos of
      the alleged crime scene for trial purpose.**

However, there was no damages to the property presented at trial
, and no finger prints of the defendant (whom was not wearing

14

gloves this particular day) or no kind of physical evidence demonstrating the presents of three men in combate on this small porch. (Tr. 2/129). The bottles tested came back negative for any finger prints of the defendant. The photos of the bottle and the brick at trial showed niether one in them only the ground upon which they were said to have been. (Tr. 3/15). There was no testing done on the brick for blood, skin cells, or fibers from the defendant or the victim. (Tr.3/17). There was know photos of the porch disclosed by the prosecution, so no determination could be made regarding this part of the story, nor any defense to this part of the story. (Tr. 3/27).

When a crime is committed and there is the allegation that a weapon was used, the weapon is ought out. Where the weapon is deemed found, it is common practice for police to have the weapon tested as a matter of positive identification to see if weapon was used in the crime as alleged. When the State does not test the weapon, a seasoned attorney acting as a diligent conscientious advocate in his obligation to provide effective assistance in zealous representation of his client, (per. U.S. Const. Amends. 6, 14), "has duty imposed by both State, see Commonwealth v. Baker, 440 Mass. 519, 529 -530 (2003), citing and quoting Commonwealth v. Saferian,366 Mass. 89, 96 (1974), and Federal, see Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052 (1984), constitutional law to conduct an investigation of the facts," in order to make

15

strategic tactical judgements. Baker, Id. at 440 Mass. 519, 529-530 (2003). This serves to provide defendant substantial ground of defense, to include or exclude weapon, corroborate or dispute story, and implicate or exonerate the accused. The U.S. Supreme Court's position taken in case where the defendant has presented facts akin to the facts basis of claims raised by Mr. Hallums gives strong guidance. "Where counsel is ineffective and better work might have accomplished something material for the defendant he would be afforded a new trail in the interest of justice." See Strickland, supra, Id. at 466 U.S. 668, 687 (1984). "When the State does not have a weapon tested, the counsel sworn to defend his client should have the weapon tested to exonerate his client." See Pavel v. Hollins, 261 F. 3d 210 (2001), see also Blake v. Kemp, 758 F.2d 523, 535 (11th Cir. 1985), holding that an attorney's performance was deficient under Strickland's first prong, where inter alia, the attorney failed to prepare for state post conviction because he believed his client would not be convicted.

The opposition is to argue that counsel's representation of Mr Hallums was zealous, and counsel's mere failure to meet defendant's demands many of which the state court determined were unreasonable or unrealistic,and do not equate to the defendant's claim of ineffective assistance of counsel; However,

> **"neither he, nor the court could say what a prompt and thorough going investigation might disclose to fact."** See Powell v. Alabama, 787 U.S. 45, 53, 58

16

(1993).

Mr. Hallums case record docket entry (prima facia evidence) reflects the only motion filed by counsel was to receive funds for an investigator, only there was no evidence of his investigation ever provided to the defendant. ( Rule 30, R.1-6). Living in the twenty first century defendant should have the right to due process of the highest extent, with the existance and the assistance of forensic science experts available in this day and time. The U.S. Supreme Court's landmark decision in Gideon v. Wainwright, 372 U.S.335, 83 S.Ct. 792 (1963), made it clear four decades ago that the right to counsel, guaranteed to federal defendants through the Sixth Amendment cluase is a fundamental right guaranteed to state defendants through the due process cluase of the Fourteenth Amendment.

> A.B.A. Standards for Criminal Justice, Standard 4-1.,
> 1. Defense counsel should seek to reform and improve
> the administration of Justice. When inadequacies or
> injustices in the substantive or procedural law come
> to defense counsels attention, he or she should sti-
> mulate efforts for remedial action.

Defense counsel in common with all members of the bar is subject to standards of conduct stated in statutes, rules, decisions of courts, codes and canons of professional conduct. Mr. Hallums trial counsel failed grossly to reflect these standards in his representation which gravely affected the outcome of this case. Notwithstanding the court failure to take action for the jury to view the alleged crime scene. (Rule 30, R.3. paper entry #19.0). Counsel let the jury guess the evidence.

17

The defendant's due process was violated from day of
his arrest not neglecting to bring these concerns to the at-
tention of trial counsel, he even spoke to the judge about his
dissatisfaction with the representation he was receiving from
counsel. (Rule 30. R.53). Then appellate counsel withdrew from
his case refusing to honor the request of Mr. Hallums and raise
the issue of ineffective assistance of counsel in his appeal.
After the appointment of new appellate counsel, whom fail to
raise this issue in his appellate brief of the case, after
affirmance of the conviction counsel withdrew leaving the de-
fendant to pro se these matters.

The defendant issue is not without merit or foundation
, nor is it sui generis. The Massachusetts Supreme Judicial
Court, the State Attorney General, the head of Committee for
public counsel services and others all acknowledged the unwil-
lingness of the State Legislature to raise pay for court ap-
pointed counsel since 1997. This Prompted "systemic failure."
In Lavallee v. Justices in Hampden Superior Court and others,
442 Mass. 228 (2004), the states highest court reviewing the
condition of court appointed counsel in the context of not enough,
with the reason why, and the consequence. The court reasoned in this pub-
lished opinion and declaration, inter alia. "Public safety ..., comes with a
cost. One of the components of that cost is the level of compensation at
which counsel for indigent defendants will provide the representation required
by our Constitution. See, e.g., Smith v. State, 118 N.H. 764, 771
, 394 A.2d 834 (1978),...other courts that have considered ques-
tions similar to those presented in this case, lack of counsel

18

or the inadequate compensation of counsel is instructive. Con-
cluding that the 'inadequate compensation of counsel amounts to
the deprivation of the constitutional rights of the criminal de-
fendants represented by inadequately compensated counsel,...' The
inadequacy of compensation for private attorneys who represent
indigent criminal defendants has persisted for many years. The
continuation of what is now an unconstitutional state of affairs
..." Lavallee, supra, Id. at 442Mass. 228 (2004).

Inlight of the aforemented opinion of the Massachusetts
Supreme Judicial Court on the matter of inadequate compensation as
it deprives indigent defendants of their constitutional rights.
Any opposition to Mr. Hallums' claim and contention of receiving
ineffective assistance of counsel must fail. By the opinion of
the states highest court, the inference can be drawn that intri-
nsically ineffective assistance of counsel created by inadequate
compensation existing for the last two decades substantually
contributed to the grossly dificient conduct of Mr. Hallums'
trial counsel. Thus prejudice to Mr. Hallums' Due Process and
Sixth Amendment guarantees.

In conclusion, facts in record of case support petitioner's
argument. (a) Trialcounsel fail to interview and call potential
witnesses. (b) Trial counsel deprived petitioner effective assis-
tance where trial counsel fail to subpoena medical records of the
accuser. Furthermore, (c) trial counsel deprived the defendant
effective assistance where he fail to investigate/test the alleged
weapon "ROCK" for trace evidence of blood, skin tissue, hair,

19

fibers ect..., alleged used in alleged assault, and he failed
to obtain photographs of alleged crime scene and the accusers
alleged injuries especially for trial purposes. "Strategice
choices made after less than complete investigation are reason-
able  only to the extent that reasonable professional judg-
ments support the limitations on investigation." Wiggins v.
Smith, 539 U.S. 510, 533, 123 S.Ct. 2527, (2003), qouting
from Strickland v. Washington, supra at 690-691, 104 S.Ct.
2052. Trial counsel's ommissions demonstrate a dereliction of
duty imposed by State and Federal Constitutional law,causing
prejudice to Mr. Hallums' right to a fair trial, resulting
in his conviction.

20

## ARGUMENTS

## II. PROSECUTIONS CLOSING STATEMENTS WENT BEYOND THE REALM OF "FAIR" AND WERE IN FACT PREJUDICIAL AND CREATED A RISK OF MISCARRIAGE OF JUSTICE.

### (a) Prosecutor's closing statements relevant to the"rock" were overzealous and missleading.

The prosecutors statement, what test should we run on this rock, there is no such mythical test on a rock. (Tr. 3/38,50) This closing statement was misleading to the jury to think there is no such kind test that could have been performed on the brick that they put into evidence. The accuser gave testimomy that he was  assaulted 15-20 times with the brick (Tr. 2/53,103,118). The prosecutors statements whether the police could have taken photos and that there is no mythical test that can be done on a brick was a opinion not a fact. The Prosecutor is not a expert in scientific or forensic expert to weigh a opinion like that to a jury. The prosecutor has exceeded the bounds of proper closing argument U.S. V. Cotter, 425 F.2d. 450,452-453(1st. Cir.1970). The prosecutors statement violated the rule that closing arguments be limited to the "evidence" Commonwealth V. Earltop, 372 Mass. 199,205, (1977). It is fundamentalviolation when a prosecutor puts the jury in summation of facts or objects that have not been subject to cross-examination, rebuttal, and a oppertunity to adress in argument. Rules of Professional Conduct and Comments, 3:07, Rules of Court.

> The prosecuter succeeded in excluding evidence, then inviting the jury to draw from the absence of the evidence.

21

By the prosecutor using the statement "THERE IS NO MYTHICAL TEST ON A ROCK", (Tr.3/38), was improper. Since there is a general acceptance among the scientific field which does D.N.A. testing on all types of objects, Commonwealth V. Sok, 425 Mass. 787-789(1997) See, U.S. V. Lowe, F. Supp. 401,418(D.Mass.1997). The prosecutor improper statement only served to make it less likely that the jury will return with a verdict based on fair calm consideration of the evidence. The weapon being a brick with four sharp edges and the ridges should have been some kind of scrapes or scratched the victims skin which could extract blood,fibers,ect , from hitting against a person that many times. Commonwealth V. Gallarelli, 399 Mass. 17(1987).

> In Gallarelli, the defendants request for police reports and scientific reports of showing absence blood on the knife recoverd from the defendant, and therefore required prosecution to disclose laboratory report, if defendant show a substantial basis for claiming that report was material and entitled him a new trial. Id.

By contrast, many state appellate court have, continued to analize the admissibility of scientific evidence under, Frye V. United States, 293 F. 1013,1014(D.C.Cir.1993), and an apply de novo standard of review. See, State V. Bogan, Ariz. 506,509,905 P.2d. 515(Ariz. Ct. App. 1995). We are living in a world that is scientifically advanced there are so many analysis and methods in the forensic and scientific field from the government and many private laboratories. The prosecutor gave his personal opinion and forced this statement on the jury. For the prosecutor to say there is no such forensic laboratories that would have tested review, analize, and interpret procedures and protocals

22

on this rock was indeed a personal opinion and improper stateme-
nt. The Commonwealth did'nt substain the burden of proof with the
regard to the reliability of forensic testing. For the prosecut-
or to say there is no such thing is a misscarriage of justice,
United States V. Cotter, F.2d. 405,452-453(1st.Cir.1970).

The scope of proper argument is simply stated. Counsel may
argue as to the evidence and "fair" inferences from the evidence
, Commonwealth v. Seviere, 409 N.E. 2nd. 481 Mass. App. Ct. 745
(1986), See, Commonwealth V. Berrio, 43 Mass. 836,(1997), Qouti-
ng, Leone V. Doran, 363 Mass. 1,18,292 N.N. 2nd. 19(1973), Trial
counsel are or should be familiar within the rule, as set out in
many cases, the constitutional demension.

Rule 3.8 Special Responsibilities Of A Prosecutor, A-J,
list the obligation and the responibilities, he or she is the
Minister of Justice and not simply that of a advocate. This does
carry within  specific obligations to see the defendant is acco-
rded procedural justice and that guilt is decided upon the basis
of sufficient evidence. In paragraph,(h)-(i) respectfully stated
the limitations of personal knowledge of facts and personal opin-
ion on matters before the tier of fact. So in this case where the
brick was heavly used throughout the trial the prosecuter imperm-
isssibly argued fact not in evidence, because the lack of test he
made his own calculation that was improper, forcefully and aggre-
ssively was so overwhelming that it prejudice the defendant.

(b) **Prosecutor's closing statements based on race
deprived the defendant of fair trial when he
injected comment on race.**

At no time in the trial did the defense ever play the race

23

card, nor is the pititioner now. The reality is that we still
have racial, problems today and this case was never handled in
just way, it has to be reviewed with the fairness of the law,

> **This was a very deep remark and a low blow to the
> defense. ⸫ People do make judgements based on race
> and sometimes police do that. Ladies and Gentlemen
> that is not a issue in this case. It is something
> to cloud the waters in this case.**

The prosecutor was in full power to inject this into a jury
of 11-whites, to the only one black women on the jury in this
case that sat on the jury. In a stage where the prosecutor has
full advantage the remarks were interally injected. A prosecut-
or may not appeal to ethic race or racial prejudice to obtain a guilty
verdict, or inject his or her opinion beliefs into closing
arguments, Commonwealth V. West, 688 N.E. 2nd. 1378,44 App. Ct.
150(1998).

> **Personal knowledge, opinion or belief. It is
> impermissible for trial counsel to inject his
> beliefs into closing arguments. U.S. V. Pinede-
> Ortuno, 952 F.2d. 98(1992).**

Rule 3.8, Speacial Responsibility of a Prosecutor, (g-j)
(The prosecutor is prohibited extra judicial statements, and
can and should avoid comments which have no legitiment purpo-
se and have substantial liklyhood of increasing public oppro-
brium of the accused. A prosecutor shall not assert a personal
opinion as to the justness of a cause as to the guilt or the
innocence of an accused). This remark could have stirred up
some racial hatred among the jury, and made them chose a side
instead of facts. This was impermissible to inject his perso--
nal belief and opinion into this jury in his closing argument
Chapman V. California, 386 U.S. 18,87 S. Ct. 824,17 L.Ed. 705

24

(1967). See Francis V. Franklin, 471 U.S. 307,105 S.Ct. 1965
L.Ed. 2nd. 344(1985), Quoting, Commonwealth V. Lara, 39 Mass.
App. Ct. 546,551-552(1995)

> In Lara, the reference to group membership or race
> may have awaken  bias among some jurrors. For this
> reason the prosecutor had a duty to steer clear of
> making such charatizations to avoid the possibility
> of warranting a new trial.

The defendant was totally under-represented on the jury
panel with only one African American. The defendant was not
being judge by a jury of his peers. The prosecuror was fully
aware of the 1 black women to 11 white on the panel. This
statement injected racial hatred into the trial. Commonwealth
V. Mahdi, 388 Mass. 697,692-693,(1983). Quoting, Smith V. Te-
xas, 311 U.S. 128,130,61 S.Ct. 164,85 L.Ed. 84(1940).

The commonwealth asserts that the standards enuciated in
Swain V. Alabama, 380 U.S. 202,85 S.Ct. 824,13 L.Ed. 795(196-
5), should be incorporated into the Massachusetts, Constitut-
ion that the protections offered by the right to trial by a
jury of your peers, guaranteed by Art.12, provide an basis
for examination of the prosecutors use of peremptory challen-
ges to exclude black juroros. Because of the lack of African-
American in the jury selection the defendant at least deserv-
ed a fair trial free from prosecutors scheme to get a convic-
tion.

In conclusion of these remarks are indeed personal opin-
ions. We agree that a prosecutor is the representative not of a
ordinary party to controversy, but a sovereignty whose is
obligated to govern, and whose interest, therefore, in a cri-

25

minal prosecution is not that it shall whin a case, but that justice shall be done. Berger V. United States, U.S. 78,88,55 S.Ct. 629,79 L.Ed. 1314(1935. The improper closing of the prosecutors, the conducting of the test of the rock, stating that there is no kind of testing the weapon that its a "myth", and injecting racial aspects into closing stirring up the jury to think other  than the facts created a substantial risk of miscarriage of justice.

26

### ARGUMENTS

III. THE ARMED BURLARY AND HOME INVASION CHARGES NEVER
REACHED THE ELEMENTS OF THE INDICTMENT CHARGES.

(a) The accusser claimed he was pushed through
a door in a struggle and then retreated,
there was no actual breakin in this case.

The Appeallate brief that the defendants Appeal Counsel
filed to the Appeal Court speak for itself,there must be a
breaking and a entering to constitute a burglary crime. See
Commonwealth V. Cotto, 52 Mass. App. 225,228435 Mass. 1101(20-
01). An intruder breaks to enter by moving to a material degr-
ee something barred the way. Commonwealth V. Tilley, 355 Mass.
507,508(1969). The word "break", as it appears in statutory
crimes against property, retains its common law meaning, which
includes the doctrine of constructive breaking. Commonwealth V
. Labare, 11 Mass. App. Ct. 370,377(1981). A constructive bre-
aking is one invoving elements of trickery and subterfuge.
Labare, 11 Mass. App. Ct. at 347 (discussing precedential val-
ue of Commonwealth V. Lowery, 158 Mass. 18,32(1893).

Mr Kenny testified that he was pushed through the door
into his house (Tr.2/56). He also claimed the door was not
locked (Tr.57)" it was just pulled closed and I fell into the
door fighting them (Tr./58), and then Mr Kenny testified that
he simply one pushed all three men at one time back out the doo-
r ( I took them like this, and threw them and slam the door and
then locked the door behind me)(Tr.2/59). The Commonwealth theory
was that the breaking occurs when the three men pushed Mr Kenny

27

through the door. Indeed, the fact of a push from phyiscal con-
tact, as opposed to the push of the directional movement of the
combat, is less than clear from the evidence. Mr Kenny tells us
...they backed me against the door...and I fell into the door
fighting them (Tr.2/57-58). He said, the door was ajar it was'nt
locked. Because there was no damage to the door or its hardware
(Tr.2/129), in any event, whether the door was ajar is not perti-
nent, See Commwealth V. Purcell, 19 Mass. App. Ct. 1031(1985)
    **Per curiam, allowing inference that defendant
    moved the door, left ajar, to the material
    gegree, exept to indicate the likelihood of
    an open due to Mr Kenny deliberate (force)
    retreat.**

    To have push someone against a door or through a doorway
into his dwelling is not breaking in common law tradition.
Breaking has long been understood to include all actions that
violate the common security of dwelling Commonwealth v. Burke,
392 Mass. 688, 689-690 (1984). The purpose of the burglary stat-
utes is to proscribe conduct violating a person's tight of
security in a place universally associated with refuge and safety
, the dwelling house. Mr. Kenny left the common security of his
dwelling when he confronted the three men outside. (Tr.2/49-50).
A dwelling's common security does not come into play simply due
to the directional movement of a resident's street combat. Mr.
Kenny showed no interest in security, refuge, or safety of his
dwelling, and no statute proscribes armed burglary of a neighbor-
hood, much less a neighbor hood with a large public park. (Tr.2/42, 2/70-71).
The 20 to 30 year sentence hardly reflects the facts related by Mr Kenny and
the indictment indicates rampant overcharging.

28

Applying a redifinition or expansion of the common law notion of breaking to the defendant in this case generally implicates the due clause of the 14th Amend., U.S. Constitution, an Article 12, of Massachusetts Declaration of rights. The expansion of the breaking element include the eventual movememnt of a outdoor fight aggravates or makes greater the offense of armed burglary. See Commonwealth v. Bargeron, 402 Mass. 589 (1988), discussing Calder v. Bull,,3 U.S. (3 Dall.) 386, 390 (1798). But see Commonwealth v. Santiago, 428 Mass. 39, 43 (1998).

The fight that began befor entry, resulted in an entry and continued after entry fails to satisfy the intended felony element of armed burglary charge (as assault and battery with a deadly weapon. The phase to "tc commit " imples an act intended in the future rather than past or ongoing one. See Commonwealth v. Brown, 431 Mass. 772, 775 (2000) (underfined statutory terms must be understood in accordance with generally accepted plain meaning). The necessity of intending a factually distinct felony pertains to the instant case because arm assault in a dwelling under G.L. c. 265, §18A is a lesser included offense of armed burglary under G.L. c., 266 §14. Commonwealth v. Enos, 26 Mass.App.Ct. 1006, 1008 (1998). The crime of armed assault in a dwelling requires a specific intent. There was no person within the resident's dwelling at the time of the incident alleged to constitute a breaking.

This element that the commonwealth must prove beyond a reasonable doubt is the breaking and entering took place at night while a person was lawfully in the house.

It would defy the law of phhsics for Mr Kenny to have been both in the house and simultaneously out side instrumentally used

29

for breaking into the house. Notable, the entry into the porch does not put Mr. Kenny within the dwelling according to the moderl Penal Code § 221(1),(1962) any one could have entered his porch that leads to the house during the evenig of questing. We would assume a visitor would assume to have to enter the porch to get to the house. See and compare Commonwealth V. Pietrass, 392 Mass. 892.901(1984),(any vistor would naturally expect to pass the porch to gain access to the front door).

In Mr Kenny testimony he said, the door was ajar (Tr.2/56-58 ), Meaning the door was not closed, entry through an open door is not a breaking. Commonwealth V. Steward, 7 Dane Abr. 1361789) The key element to armed burglary, is who ever, after the having entered with such intent, breaking such dwelling house at night time. There was no actual breaking un this case, there must be both a breaking and entering to constitute a burglary crime Comm-onwealth V. Cotto, 52 Mass. App. Ct. 225,227(2001). The purpose of the burglary statute is to prescribe conduct violating a pers-on's right of security in a place universally associated with re-fuge and safty of the house. Breakin requires the intruder's material movemnt of inanimate something Barring the way, Tilley, 355 Mass. at 508. and here, neither Mr. Hallums nor his compani-ons moved anything inanimate. Case law dose not support the concept of break by moving someone that barred the way. Pushing someone into his doorway into his dwelling is not a breaking in the common law and fails to reach the elements of armed burglary warranting a dissal of indictment as a matter of law.

30

(b) There was no person within the dwelling of
    the alledge breaking to constitute home
    invasion.

The home invasion statute does not pertain to a fight that
begins  on the street and proceeds without cessation across one's
combatants threshold. The gist of the crime is an unlawful entry,
knowledge of one or more persons inside, and committing an assau-
lt, or intentionally causing injury. Commonwealth V. Mahar, 430
Mass. at 651 n.4. Qouting State V. Tippett, 270 N.C. 588,595(1967
),(requires the presence of someone at the time of the breaking
and entering).

The home invasion statute punishes more severly the armed
intruder who invades another's dwelling while knowing that one or
more is present and then proceeds, to assault those individuals.
Commonwealth V. Dunn, 43 Mass. App. Ct. 58,63,1108(1997). The
statute does not appear to intend imposition of a 20 year mandat-
ory minimum when an assault commences prior to entry in the cont-
ext of a continuous fight. That intent and its predicate pertain
a fortiori to home invasion precisely because what sets home inv-
asion apart from similar crimes is the additional element that
the the armed intruder knows, or should know, that an occupant is
present before entry.

   The continuing series element must be further defined
   in the indictment beyond the statutory langage to in-
   form the defendant of the crime which he is charged
   United States V. Revera, 837 F.2d. 906(10th. Cir.1988).

In the instant case, the notion of home invasion (or reside-
ntial burglary) does not pertain to the criminal enterprise where
the resident was not present within his dwelling after exiting
his residence. The occupant was not "confronted" by the intruder

31

Commonwealth V. Goldoff, 24 Mass. App. Ct. 485,462(1987), rather
Mr Kenny did confront the three men on the street. When Mr Kenny
left his residence (Tr.2/49-50,2/112) he also left his right to
security in one's place of habitation, Goldoff, 24 Mass. App. Ct.
at 462.

Mr Kenny left his place of refuge and safety and initiated
the confrontation, he defeated the intent of home invasion statu-
te. Nothing in the statute implies on, on agian off again right
during the course of continuous fighting, and any contention to
the contrary is too speculative to survive 14th. Amendment Due
Process scrutiny. See United States v. Batchelder, 442 U.S. 114
123 (1979), (no one maybe required at peril of life, liberty or
property to speculate as to the meaning of penal statutes). In
Commonwealth v. Mitchell, No. 05-P-1246, Grasso, Doerfer, Mill,
JJ.,(2006), cited the petitioner's case, Hallums, 61 Mass.App.Ct.
50, 53 (2004).

> In Commonwealth v. Hallums, 61 Mass.App.Ct. 50, 53 (2004),
> we assumed that the armed burglary statute required that the
> victim be present at the time of entry, but held that the
> evidence permitted the jury to find that the victim was in
> his home at the time the defendant entered even though the
> defendant gained entry by pushing the victim ahead of him
> . It was not necessary made any difference if the defendant
> stepped through first.

As we read there was no mention of any body present during the
break. In any event, the rule of lenity, Bell v. UnitedStates,
349 U.S. 81, 82 (1955) should have been applied. Smith v. United
States, 508, U.S. 223, 246 (1993), (Scalia, J., dissenting)
even if the readwer does not consider the issur to be clear as
(we) think, that is eminently debatable-and that is enough, under
the rule of lenity, to require finding for the defendant.

Where "a statute can be made constitutionally definite by a reasonable construction, the court is under duty to give that construction." Thomas v. Commonwealth, 355 Mass. 203, 207, (1969).

The home invasion statute is altogether too problematic to apply confidently to an ongoing fight that began on the street and momentarily crosses a resident's threshold before that resident over powers his opponents, (Tr.2/59), and then chase them down the street. (Tr.2/61). Just a prosecutor can manipulate the same evidence rule so as to harass and oppress. Commonwealth v. St. Pierre, 377 Mass. 650, 662 (1979). The petitioner Mr. Hallums was here grossly overcharged.

## CONCLUSION

For the foregoing reasons the indictments of (Armed Burglary and Home Invasion) should be dismissed as a matter of law.

Respectfully submitted,

John R. Hallums, Jr. Pro se
One Administration Road
Bridgewater, MA. 02324

33

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

(CERTIFICATE OF SERVICE)

I, John R.Hallums,Pro-Se petitioner hereby certify that on

this ___14___ day of _Dec___ year _2006_ , I did indeed serve a

copy of the same Memorandum Of Law In Support Of Writ Of Habeas

Corpus 28, U.S.C. 2254(b), upon the Attorney General Office,

Asst. Eva M.Badway, at One Ashburton Place, Boston MA. 02108, by

first class mail postage prepaid.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

Respectfully Submitted
By Petitioner Pro-Se

John  R.Hallums#w69281
One Administration Rd.
Bridgewater, MA. 02324