UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN R. HALLUMS,<br><br>      Petitioner,<br><br>      v.<br><br>LOIS RUSSO,<br><br>      Respondent. | CIVIL ACTION<br>NO. 05-11171-WGY |

MEMORANDUM AND ORDER

YOUNG, D.J.                                                June 14, 2007

## I.   INTRODUCTION

John R. Hallums ("Hallums"), acting pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Hallums' petition is based upon several alleged errors which, he says, denied him a fair trial as guaranteed by the Constitution.  The errors fall into three categories: (1) ineffective assistance of counsel; (2) prosecutorial misconduct during closing arguments; and (3) insufficiency of evidence to support a finding of guilt.  Pet.'s Mem. of Law in Support of Petition for a Writ of Habeas Corpus [Doc. No. 13] ("Pet.'s Mem."), at 1-2.

## II.  BACKGROUND

On March 21, 2001, a Massachusetts Superior Court jury sitting in and for the County of Hampden found Hallums guilty of

home invasion, assault and battery, assault and battery with a dangerous weapon, and armed burglary.

Hallums' conviction stems from a September 19, 2000 incident in which he, along with two other men, confronted and then assaulted an off-duty police officer.[1] During the course of the assault, the victim was pushed through a closed but unlocked door into the entryway of his house. The defendant wielded a brick in the commission of the assault.

On direct appeal to the Massachusetts Appeals Court, Hallums argued that the two of the charges, armed burglary and home invasion, failed as matter of law because insufficient evidence had been presented to satisfy the elements of those charges. Specifically, Hallums argued that an ongoing assault which happens to cross the threshold of a dwelling does not constitute a "breaking" as required in those two charges. Hallums further argued the home invasion charge, which requires someone to be within the dwelling at the time of the "breaking", failed as a matter of law on the ground that the victim could not constitute that occupant. On April 28, 2004, the Appeals Court affirmed the conviction. Commonwealth v. Hallums, 61 Mass. App. Ct. 50 (2004). Hallums then filed an application for further appellate

---

[1] In a proceeding instituted by a petition for a writ of habeas corpus, a determination of a factual issue made by a state court is presumed correct and the petitioner bears the burden of rebutting by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Norton v. Spencer, 351 F.3d 1, 6 (1st Cir. 2003).

review with the Massachusetts Supreme Judicial Court, which was denied without comment. Commonwealth v. Hallums, 442 Mass. 1104 (2004).

Hallums subsequently filed a motion for a new trial, arguing that he had received ineffective assistance of counsel at his trial because his trial counsel failed to: (1) call two witnesses, including one of Hallums' cohorts on the night of the crime, (2) request medical records of the victim from the night of the attack, and (3) request forensic testing of the proffered weapon (the brick). Hallums further claimed that his right to due process had been denied due to two allegedly inappropriate statements made by the prosecutor during closing arguments. Hallums pointed to an oblique reference to his race and a mocking query about forensic testing.[2] Hallums also claimed that he was entitled to postconviction discovery. Hallums' motion for a new trial was denied by the Superior Court and this denial was affirmed by the Appeals Court. Commonwealth v. Hallums, 66 Mass. App. Ct. 1110 (2006). In its ruling, the Appeals Court held that each of Hallums' claims had been waived, given that he did not raise them during his trial on direct appeal. Id. at 1110.

---

[2] The two sets of statements identified by petitioner are as follows: "People do make judgments on race. And sometimes police officers do that. Ladies and gentlemen, that's not an issue in this case. It is not. It is something to cloud the waters in this case," Trial Tr., Vol. III, at 41:22-42:2, and the prosecutor's dismissive reference to "some mythical test that can be done on this brick," id. at 50:21-22.

Hallums now reasserts the claims of ineffective assistance of counsel and the denial of his due process right stemming from the allegedly inappropriate closing statement.  In addition, he has reasserted his claim of insufficient evidence for the home invasion and armed burglary charges.

## III. DISCUSSION

A federal court can review a petitioner's state court conviction "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In addition, the bases for the alleged violations of federal rights must have been fully and completely reviewed by the state courts, if possible, before this Court can review them.  Id. § 2254(b)(1).  If a matter has been fully adjudicated by the state courts, then this Court must give deference to the state court decision, and can only review the matter to determine if the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "based on an unreasonable determination of the facts."  Id. § 2254(d).

In addition to the above limitations on a federal court's review of a state court conviction, it is well established that a federal court cannot review a claim that a state court declined to address because the applicant failed to meet a state

procedural requirement. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). This procedural default rule applies whenever a state judgment rests on "independent and adequate state procedural grounds." Id. at 730. This bar to federal review can be circumvented by showing cause for the default and actual prejudice as a result of the violation of federal law, or by demonstrating that a failure to consider the claim will result in a fundamental miscarriage of justice. Id. at 750.

As the Appeals Court has ruled that the failure to raise the ineffective assistance of counsel and the due process claims during Hallums' direct appeal effectively waived those claims, this Court's analysis must start with the procedural default question.

### A.  Procedural default of the ineffective assistance of counsel claims

Petitioner makes three claims that he was denied effective assistance of counsel during his trial in violation of his Sixth Amendment right to a fair trial. First, he claims that his attorney unreasonably failed to call as witnesses two men who were present the night of the assault. Pet.'s Mem. at 7-10. Second, he claims that his lawyer, contrary to any reasonable practice, did not obtain the medical records of the victim for the night of the assault. Id. at 10-14. Third, Hallums claims that his lawyer, again in an unreasonable manner, failed to have the brick, which was proffered as the weapon of the assault,

5

tested for possible hair, skin or blood residue.  Id. at 14-20. None of these three arguments were raised during Hallums' appeal of his conviction to the Appeals Court.

Waiver must be supported by an "adequate and independent state ground."  The requirement for an adequate ground for procedural default is that the practice be consistently applied. Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002).  While Massachusetts does have a state practice of waiving issues not presented at trial or on appeal, see Mass. R. Crim. P. 30(c)(2), the Supreme Judicial Court recently explained that "the preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial."  Commonwealth v. Zinser, 446 Mass. 807, 810 (2006).  Consequently, because the state court has not addressed the federal claim, this Court must review the merits of these claims de novo to determine whether grounds exist to grant Hallums' petition for a writ of habeas corpus.  Norton, 351 F.3d at 5; Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).

   B.   **Merits of the Ineffective Assistance Claims**

In order to prevail on a Sixth Amendment claim of ineffective assistance of counsel, Hallums must satisfy the two prongs set forth in Strickland v. Washington, 466 U.S. 668 (1984), namely that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) prejudice resulted

6

from this error.  Id. at 691-92; see also Matthews v. Rakiey, 54 F.3d 908, 916 (1st Cir. 1995).  The first prong requires petitioner to show that counsel has failed to employ "such skill and knowledge as will render the trial a reliable adversarial testing process."  Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) (quoting Strickland, 466 U.S. at 688).

To demonstrate "prejudice" as required by Strickland, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; Lynch v. Ficco, 438 F.3d 35, 48 (1st Cir. 2006).

### 1. Failure to Call Witnesses

Hallums claims that there were two witnesses to the assault who could provide exculpatory evidence but who were neither interviewed nor called to testify on his behalf.  One potential witness was one of Hallums' companions that evening, Alvin Jordan.  The other was a passerby, Barry LaRiviere.  Pet.'s Mem. at 7.  Hallums claims that both potential witnesses would have testified to an alternate version of events which would have created a reasonable probability that the outcome would have been different.  Id.

Hallums cites Luna v. Cambra, 306 F.3d. 954 (9th Cir. 2002),

mandate recalled and reissued as amended, 311 F.3d 928, for the proposition that a failure to interview and call a potential exculpatory witness is per se unreasonable. Luna does not so hold, however. Rather, Luna merely holds that counsel is constitutionally ineffective for not interviewing witnesses only when failure to do so would undermine confidence in the outcome. Id. at 961.

The present case resembles Lema v. United States, 987 F.2d 48 (1st Cir. 1993), in which petitioner asserted that he was denied a "viable defense" when defense attorney chose not to interview or call to testify three potential witnesses. In that case, the First Court recognized that "[t]he decision whether to call a particular witness is almost always strategic." Id. The court further noted that "[w]here the prosecution's case is less than compelling, . . . the risk of 'rocking the boat' may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony." Id.

The decision not to interview witnesses must be viewed in the context of the counsel's strategy. "Counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is . . . a matter of fact and of the realities of proof, procedure and trial tactics." Id. at 55 (quoting Cepulonis v. Ponte, 699 F.2d 573, 575 (1st Cir. 1983)).

Hallums' defense counsel chose to use a defense that called into question the adequacy of the government's evidence. As in Lema, it was a reasonable course of action for defense counsel to choose to focus his strategy on discrediting the government witnesses, rather than presenting additional testimony, which could possibly serve to substantiate the government's case. See Lema, 987 F.2d at 54.

The statements of the two potential witnesses do not indicate that they would rise to the level of "crucial." In fact, the two witnesses in question, in their statements to police, did not exculpate Hallums, but did inculpate him in a second attack against an elderly gentleman, an assault for which Hallums was not convicted. See Respondent's Supplemental Answer [Doc. No. 10] ("Respondent's Supp. Ans."), Ex. 10 at A#1, #4-#6. Even assuming, arguendo, that these two witnesses might contradict part of the victim's story, this is not apparent from their statements, and it thus was not below an objective standard of reasonableness for Hallums' trial lawyer to forgo interviewing them. Thus Hallums has failed to show that this conduct constituted error as required by Strickland.

**2. Failure to Subpoena Medical Records**

Hallums' second criticism of his attorney's performance is his failure to obtain the medical records from the victim's visit to the hospital subsequent to the incident. Pet.'s Mem. at 10-

14.  Review of the record shows that this argument fails to satisfy the second prong of <u>Strickland</u>, obviating the need for a court to consider the first prong.  <u>Knight</u> v. <u>Spencer</u>, 447 F.3d 6, 15 (1st Cir. 2006).

At trial, the victim testified upon cross examination that he was hit in the face but did not bleed, receiving only a swollen nose.  Trial Tr., Vol. II, at 104:12-23.  He also testified that the only sign of injury on his body was "minor bruising."  <u>Id.</u> at 127:22-24.  Further, during cross-examination, Hallums' attorney made much of the fact that despite claiming to have been struck a dozen times, no pictures were taken of the victim's injuries.  <u>Id.</u> at 118:19-119:7.  In his closing statement, Hallums' attorney called the jury's attention to this failure to document the victim's injuries, stating, "Why wouldn't the police, with their equipment, take photos of a person who has just been beaten, for whatever it was worth, to give a jury an opportunity to make a determination in a serious case. . . ."  Trial Tr., Vol. III, at 18:10-14.

Despite this strategy of calling into question the legitimacy of the victim's wounds, the jury found Hallums guilty of the assault.  It is unreasonable to assume, given this strategy, that had a medical record been introduced in evidence, the jury would have been persuaded to change their verdict.  A medical record which documented minor injuries would have failed

to contradict the victim.  It could also have undermined the strategy of calling into question the thoroughness of the police work.

Leaving aside the question of attorney error in failing to request medical records of the victim, this Court holds that the failure did not constitute prejudice.  There was no ineffective assistance of counsel on this point.

### 3. Failure to Test the "Brick"

Hallums' final argument as to ineffective assistance is that his attorney did not request forensic testing of the brick which the police said he used during the assault.  Pet.'s Mem. at 15.  Hallums suggests that a forensic test would fail to uncover any "blood, skin cells, or fibers from the defendant or the victim." Id.  The implication of Hallums' argument is that a negative test result would both call into question the credibility of the victim and exonerate the defendant.

There is a fundamental problem with the logic of this argument.  While forensic testing of an item which does uncover evidence of a particular person's bodily tissue could be persuasive that the person had contact with the item, it does not follow that failure to uncover such evidence implies that there was no contact between the person and the item.  Cf. Fox v. Ward, 200 F. 3d 1286, 1293 (10th Cir. 2000)(observing that forensic evidence which inculpated one defendant did not necessarily

11

exculpate another).

Moreover, as with the failure to obtain medical records, Hallums has failed to show prejudice in failing to obtain forensic tests.[3] The victim testified that he did not know if the brick actually made contact with him, or whether it was Hallums' hand. Trial Tr., Vol. II, at 114:5-12. He testified that he did not bleed. Id. at 104:12-23. Thus it does not follow that testing which did not reveal genetic material from the victim would necessarily contradict the victim's testimony, and thereby discredit him. Cf. Sena v. Spencer, No. 05-10381-DPW, 2006 WL 568306, at *7 (D. Mass. Mar. 8, 2006) (Woodlock, J.) (holding that the failure to call a ballistics expert who would not directly contradict witnesses did not constitute prejudice).

In addition, Hallums' lawyer did call into question the credibility of the victim and the police department by questioning why the police did not perform such forensic tests. See Trial Tr., Vol. III, at 17:2-6, 20:22-21:3. The lawyer attempted to sow the seeds of reasonable doubt by suggesting both that the tests would have turned up nothing and that the police department was incompetent (or worse, biased) in its

---

[3] It is a matter of dispute whether such forensic testing exists. Without an evidentiary hearing, it would be impossible for this Court to rule on whether failure to obtain such a test was an attorney oversight.

investigation.  See, e.g., id. at 19:15-23, 25:2-10.  While this strategy did not turn out to be successful, it is not for this Court to second-guess it.  Strickland, 466 U.S. at 689.  The testing of the proffered weapon could seriously have undermined this strategy, making it more likely, not less likely, that the jury would believe the overall story told by the victim and the other members of the police department.  Thus, the failure to request and obtain forensic tests on the brick were not prejudicial to Hallums.

### 4. Overall Conduct

Before leaving the discussion of ineffective assistance of counsel, it is incumbent on this Court to consider whether the actions of Hallums' counsel, despite the individual analyses, constituted ineffective assistance in the aggregate.  See Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002) (stating that individual "decisions may have fallen within the broad universe of acceptable professional judgments.  Taken together, however, they [may be] indefensible").

A review of the record shows that Hallums' attorney aggressively cross-examined each of the government's witnesses and made an admirable attempt to demonstrate to the jury that there was insufficient evidence to convict.  Because this strategy was unsuccessful does not suggest that it was ineffective.  Hindsight may lead Hallums to believe that a

13

different strategy would have been more advisable. Such a conclusion cannot, however, be the basis for granting habeas relief. Cf. Ruiz v. United States, 221 F. Supp. 2d 66, 83-84 (D. Mass. 2002) (Wolf, J.) (denying habeas relief on a similar set of facts).

Consequently, this Court holds that Hallums did not receive ineffective assistance and his petition for habeas corpus must be denied as to this claim.

### C. Procedural Default of the Prosecutorial Misconduct Claims

Hallums also argued that his due process rights under the Fifth Amendment were violated when the prosecutor made allegedly inappropriate statements during the trial's closing arguments. Pet.'s Mem. at 21-26. As with the claims of ineffective assistance, Hallums did not raise these claims during the trial or the direct appeal. Consequently, the Massachusetts Appeals Court, affirming the denial of his motion for a new trial, held that these claims had been waived. Commonwealth v. Hallums, 66 Mass. App. Ct. at 1110.

Unlike the ineffective assistance claims, however, Massachusetts here had an "adequate and independent state ground" for finding the unfair trial claims waived. The practice in Massachusetts is to treat as waived issues not raised in timely manner. Mass. R. Crim. P. 30(c)(2). This contemporaneous objection rule has been consistently applied as to alleged

misstatements in closing arguments.  Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995).  Therefore, this claim cannot be addressed by this Court unless Hallums can overcome procedural default.

In order to show cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986). There is here no such factor which can support the cause prong of the first exception.  Hallums' attorney had both an opportunity and the ability to raise the objection at trial, and again during the direct appeal.  Hallums has offered no explanation why his attorney did not do so.[4]

Without a showing of cause for the default, the only way in which this Court can review this claim is by first determining that not doing so would be a miscarriage of justice.  To show that a fundamental miscarriage of justice would occur in the habeas context, Hallums must establish "actual innocence." Gunter, 291 F.3d at 83.  Hallums can make no such showing given

---

[4] The oft-cited reason for such a failure is the ineffective assistance of counsel.  For Hallums to make this argument, however, he must have exhausted this claim in the state courts. As Hallums did not raise the ineffectiveness of his counsel in this respect to the Massachusetts courts when he moved for a new trial, that claim is itself procedurally defaulted.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000).  In any event, Hallums here makes no argument about the ineffectiveness of his counsel in failing to object to the prosecutor's statements.

the not inconsiderable evidence in the record pointing to his guilt.

Further, Hallums' own attorney was the first one to raise the issue of race. In his closing statement, he stated:

> On behalf of my client I want to say this, I am concerned on his behalf about a police officer who describes three black men and then calls to find out whether they stole a car. . . . It is not for me to accuse. It is for me to raise doubt. And I ask you to think about that. Go back to the testimony . . . 'three black men' stand out like a flag.

Trial Tr., Vol. III, at 32:19-22, 33:9-16. Likewise, with respect to the statements about the lack of a forensic test to identify possible evidence on the brick, Hallums' attorney first introduced the idea in his closing statement when he said:

> What do we have? An untested rock. [The victim m]ost certainly says it was handled by Mr. Hallums. What does the police department do? Serious charges are before you. And what do they do with the rock? Absolutely nothing.

Id. at 17:2-6. As the prosecutor's comments were direct responses to those made by defense counsel, it cannot be said that the prosecutor's comments created such an unfair atmosphere so as to render the trial a travesty. Consequently, failure to review the constitutionality of these comments would not be a "miscarriage of justice."

As there is no exception to the procedural default by which the Massachusetts courts declined to review this claim, it cannot be again reviewed by this Court. Without such a review, the writ

16

of habeas corpus must be denied as to this claim.

### D.  Sufficiency of the Evidence

The one type of claim which was preserved in the state court is the sufficiency of evidence claim that the petitioner raised in his direct appeal.  He posited then, and does so again in his petition, that the elements required to prove armed burglary and home invasion were not satisfied.  Pet's Mem. at 27-33.  In particular, he claims that there was not a "breaking" required by the statute and there was no one present within the home at the time of entrance.  Id.

As the Massachusetts Appeals Court specifically ruled on these issues, the only role for this Court is to determine whether that decision was clearly contrary to established federal law or based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  As to the first aspect, Hallums does not argue that any of the elements of either armed burglary or home invasion are contrary to federal law.  The only federal right which might be implicated in Hallums' argument is the right to due process, which requires the prosecution to prove beyond a reasonable doubt every element of the offense.  In re Winship, 397 U.S. 358, 364 (1970).  It is clear from the jury instructions, that this point was articulated by the trial judge, and that each element of the offenses was described to the jury.  Trial Tr., Vol. III, at 61:20-22, 87:7-95:17.  There was thus no

violation of federal law.

This leaves the question of whether the decision to convict Hallums and uphold his conviction was based on an unreasonable determination of the facts. Hallums does not argue that the facts as presented do not support a finding of guilt as to the elements of "breaking" and the presence of a person inside the dwelling at the time of the breaking. Instead, he quarrels with the state courts' definitions of these two concepts. Pet's Mem. at 28-29, 31. It is not for this Court, however, to reinterpret Massachusetts law.

The Supreme Judicial Court has defined "breaking" as an action which "move[s] to a material degree something that barred the way." Commonwealth v. Tilley, 355 Mass. 507, 508 (1969). In this case, the Massachusetts courts interpreted this definition to include the use of force which results in a victim of an assault causing the movement of a barrier to entry into a dwelling. Hallums, 61 Mass. App. Ct. at 53. The testimony of the victim and the witness supports a reasonable finding that Hallums pushed the victim through an unlocked, but closed door to his house. Trial Tr., Vol. II, at 56:4-11; 184:8-185:10.

The Appeals Court interpreted the home invasion statute to include the situation where a perpetrator enters the dwelling while there is someone inside, irrespective of whether the person was inside at the time of the breaking. Hallums, 61 Mass. App.

18

Ct. at 53. It is not an unreasonable application of the facts as determined at trial that the victim was already present in the home prior to Hallums' entry, due to the fact that it was victim who caused the door to open by being pushed through it. Id. at 51. This technically satisfies the elements of the statute, and it therefore was not unreasonable for Hallums to have been convicted on this charge.

## IV. CONCLUSION

As none of the claims presented by Hallums supports the grant of a petition for a writ of habeas corpus, his petition [Doc. No. 1] is DENIED.

SO ORDERED.

/s/ William G. Young
_____
WILLIAM G. YOUNG
DISTRICT JUDGE